1  **LEILA W. MORGAN**
   California State Bar No. 232874
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone: (619) 234-8467
4  Facsimile: (619) 687-2666
   Leila_Morgan@fd.org
5
   Attorneys for
6  GREY ZAMUDIO

7              UNITED STATES DISTRICT COURT
8              SOUTHERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| UNITED STATES OF AMERICA,      Plaintiff,   v.   GREY ZAMUDIO,      Defendant. | CASE NO.:  20CR2451-WQH   Hon. William Q. Hayes  Courtroom 14B  Date: June 21, 2021  Time: 9:00 a.m.   SENTENCING MEMORANDUM |

Grey Zamudio, by and through counsel, Leila W. Morgan and Federal Defenders of San Diego, Inc., hereby files the following sentencing memorandum. Mr. Zamudio requests this Court sentence him to 12 months and 1 day in custody, followed by a three year term of supervised release.

//
//
//
//
//
//
//
//
//

### I. Grey Zamudio

Grey Zamudio is a thirty-two year old man whose online persona is nothing like the man that others know him to be. Mr. Zamudio has lived with his grandfather, Robert Zamudio since he was a child. He has never known his father. His mother suffered from mental illness and drug addiction that eventually led to her complete absence from his life. Prior to moving in with his grandfather full time at about 14, Mr. Zamudio had to essentially be the adult in his household. He cared for his mother far more often than she did for him. He was left to find his own meals, make sure he attended school and was worried about her stability. The absence of her parenting him, left Mr. Zamudio lost and angry.

Mr. Zamudio's grandfather has been his only constant. Robert Zamudio knows Mr. Zamudio to be helpful, hardworking and caring. Robert first introduced Mr. Zamudio to guns, and going to the shooting range soon became a shared hobby for them.  His grandfather had no idea that any of the items or weapons that Mr. Zamudio had were unlawful. The man that Robert Zamudio knows is a man who works hard, and who was happy to assist him, financially and otherwise. Mr. Zamudio took on all the tasks that Robert was unable to do as he got older, and did so gladly.

Mr. Zamudio has spent his entire adult life working, primarily as a plumber. He is skilled at his trade and was able to not only support himself but assist his grandfather as well. Mr. Zamudio enjoys working. He takes pride in his work and enjoys learning more about his trade. He is hopeful that his felony conviction in this case will not prevent him from working in this trade in the future.

Mr. Zamudio has fully accepted responsibility for his actions in this case. He plead guilty very quickly. He did not file or argue any motions. He did not contest the constitutionality of the crimes for which he is charged. He made the decision to accept responsibility, acknowledge the crimes that he committed and plead guilty. The government points to his post-arrest statement where he indicated a belief that

the registration requirements were unconstitutional as an indication that he is at risk of future criminal action. However, that ignores Mr. Zamudio's acceptance of responsibility and acknowledgment that he broke federal law by possessing the charged weapons. A belief that the Federal Government may seek to unlawfully infringe on the Second Amendment rights of its citizens is not unique to Mr. Zamudio, or an indication of future criminal intent. Indeed, the state of Missouri just enacted a law declaring all federal gun laws, past present and future invalid in that state.[1] The Missouri government, has evidenced a belief that federal gun laws infringe upon the Second Amendment rights of its citizens.

Mr. Zamudio has no significant history of violence. His criminal history consists of misdemeanor convictions that occurred more than 13 years ago. The concern expressed by the probation officer and by the government, is a direct result not of the things that Mr. Zamudio has done, but rather by the things that he has said. While, understandably those statements when coupled with this offense, may cause concern they do not present the complete picture. Mr. Zamudio was present during the protests in La Mesa, following the killing of George Floyd. Those protests turned violent. Businesses were burned and looted. People were injured.

Mr. Zamudio has been a resident of San Diego for nearly all of his life. His grandfather has worked his entire life as a barber. Working in the very same type of small businesses that were being impacted by the violent protests. Mr. Zamudio went to the area, protected businesses and did so without violence. He clearly had a very strong emotional reaction to what was happening, and he wrote about those feelings online. But, importantly, he did not act on any of it.

This is Mr. Zamudio's first experience of incarceration. He has been in custody during an extremely difficult time. He spent months in San Luis, Arizona where he was the victim of a racially motivated attack. Mr. Zamudio has lost his

---

[1] https://www.kcur.org/news/2021-06-12/missouri-law-enforcement-no-longer-required-to-enforce-federal-gun-laws

right to possess firearms for the rest of his life. He will spend the next three years of his life on supervised release, where he will be closely monitored, searched and there will be certainty that he has no weapons of any kind. Even following that he will never be allowed to own or possess a firearm or ammunition. He has been sufficiently punished. The loss of his ability to own guns is sufficient to protect the public.

**II.     12 Months and 1 Day is Sufficient to Protect the Public**

Mr. Zamudio is a first time offender. He has pled guilty to the possession of unregistered firearms. Mr. Zamudio's rhetoric, rather than his offense, is driving both the probation officer and the government's recommendation in this case. Mr. Zamudio was cooperative at the time of his arrest. He cooperated during the search of his home and with the seizure of his weapons. He was not arrested brandishing these weapons, using them against others, selling them or otherwise threatening anyone with them. His offense is the possession of them.

Mr. Zamudio's conviction, and the arrest of another individual he was communicating with became national news. Griggers, arrested in Georgia, was also found to have illegal guns. Griggers position as a deputy sheriff, coupled with his own bragging about beating a Black man made the story news worth. The media attention given to the case will have a lasting impact on Mr. Zamudio. First, it places him at risk in custody, simply because his arrest led to the arrest of another and because his statements regarding people of color have become public knowledge. Additionally, when he is released from custody any employer, landlord or person who does a quick online search will see the articles detailing his conviction, and his online posts. Mr. Zamudio will be dealing with the consequences of his statements for years to come.

In addition to punishment, the Court must also fashion a sentence that will promote correction and rehabilitation. Prison is one of the most racially segregated places in our country. Prisoners self-segregate based on race as a means of

protection and survival. Any racist ideology that Mr. Zamudio holds will only be further entrenched in him during an extended time in custody. The racially motivated attack that he was already a victim of, has demonstrated that safety in custody means segregation.

Mr. Zamudio does not have a drug problem. He does not suffer from mental illness. He shares and anger surrounding the political climate of our country that is, unfortunately, not unique to him. He has marketable job skills, which he can use immediately upon his release from custody. He has family support, and the support of his grandfather's friends in the community. He can be a productive and law abiding member of society. The protection of the public is best served by assisting Mr. Zamudio in truly integrating to his community, not separating him from it. His period of supervision will allow him to work within his community, build positive relationships with individuals of varying ideologies and move forward with his life.

Mr. Zamudio is still a young man. A young man who has been forced to look at the very real consequences of his actions. His online bravado and his day to day actions are not the same. Mr. Zamudio has been a contributing member of his community in the past and he will be in the future.

### III. Proposed Changes to Conditions of Supervision

"The burden of establishing the necessity of any condition falls on the government." *United States v. Rudd*, 662 F.3d 1257, 1260 (9th Cir. 2011). A restriction on the right to free association is only valid if it: "(1) 'is reasonably related to' the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) 'involves no greater deprivation of liberty than is reasonably necessary' to achieve these goals; and (3) 'is consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007)(quoting *United States v. Sales*, 476 F.3d 732, 735 (9th Cir. 2007). Here, the proposed special conditions of supervised release are vague

//

and infringe upon Mr. Zamudio's First Amendment rights of speech and association.

### A.     Condition 1.

The probation officer proposes that Mr. Zamudio be barred from any demonstration, protest or rally, regardless of the purpose of the event. While preventing Mr. Zamudio from attending any such demonstration that has the potential for a violent response, his ability to attend events such as a political speech (i.e., Trump rally) is overbroad.

### B.     Condition 2

Mr. Zamudio will need to be able to use a cellular phone, including text messaging during the course of his employment. Text messaging is a common means of communication for his employment. He requests the ability to use this means of communication, given the monitoring condition also requested.

### C.     Condition 3

The term "extremist propaganda" is vague and does not sufficiently explain what Mr. Zamudio can and cannot access. The probation officer offers some limitation regarding the involvement of violent acts, there is no definition of what would be considered extremist propaganda. Major news outlets such as Fox and CNN have equally been referred to as propaganda from those who disagree with them. Mr. Zamudio requests that the Court strike this condition as vague.

### D.     Conditions 10, 11, and 12

In each of these conditions the probation officer seeks to prevent association with "white supremacy groups" without providing any specific group or definition of "white supremacy group." The term "white supremacy group" is vague. Indeed, the Republican party itself has been termed by some to be a white supremacy group, that is an organization that seeks to maintain social and political domination by white people. If the Court should impose these conditions, then they should be //
//

limited to specific organizations to provide Mr. Zamudio notice of who he can and cannot associate with.

## IV. Conclusion

A sentence of 12 months and 1 day, followed by a three year term of supervised release is sufficient without being greater than necessary to satisfy the purposes of sentencing in this case. Further, he requests that the conditions of supervision be modified as requested above.

                                          Respectfully submitted,

Dated: June 17, 2021        *s/ Leila W. Morgan*
                                      Federal Defenders of San Diego, Inc.
                                      Attorneys for
                                      GREY ZAMUDIO
                                      Email: Leila_Morgan@fd.org